IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

GUADALUPE FRIAS, et al.,          §
                                  §
              Plaintiffs,          §
                                  §
VS.                               §          Civil Action No. 3:23-CV-0550-D
                                  §
GENARO HERNANDEZ et al.,          §
                                  §
              Defendants.          §

MEMORANDUM OPINION
AND ORDER

          This is an action by plaintiffs Guadalupe Frias ("Frias") and Shannon McKinnon

("McKinnon") against defendants Genaro Hernandez ("Officer Hernandez"), the City of

Dallas, and John Does alleging federal-law claims under 42 U.S.C. § 1983 for false arrest and

malicious prosecution, in violation of the Fourth Amendment, and supplemental state-law

claims.  Officer Hernandez moves to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to

state a claim on which relief can be granted.  For the reasons that follow, the court grants

Officer Hernandez's motion to the extent it seeks dismissal of plaintiffs' malicious

prosecution claim under § 1983, and denies the motion to the extent it seeks dismissal of

plaintiffs' false arrest claim under § 1983 and state-law claims.

I

          The relevant background facts of this case are largely set out in a prior memorandum

opinion and order, *see Frias v. Hernandez*, 2023 WL 7311193, at *1 (N.D. Tex. Nov. 6,

2023) (Fitzwater, J.), and need not be repeated at length for purposes of deciding Officer

Hernandez's motion to dismiss. After the court granted Officer Hernandez's previous motion to dismiss, plaintiffs timely filed a first amended complaint ("amended complaint") that alleges federal-law claims for false arrest and malicious prosecution, and state-law claims for malicious prosecution, false imprisonment, and civil conspiracy.

Plaintiffs' amended complaint includes additional allegations that Officer Hernandez's misrepresentations and omissions misled the assistant district attorney ("Assistant DA") and the grand jury.[1] Officer Hernandez's alleged misrepresentations and omissions include the following: Officer Hernandez knew that the Dallas Police Department's ("DPD's") Special Investigation Unit ("SIU") found "no direct evidence" linking plaintiffs to the shooting and determined that there was no probable cause to charge plaintiffs with a crime; Officer Hernandez knew that plaintiffs did not have "any actual connection" to the person who discharged the firearm that damaged the Stainback Organization's property; and Officer Hernandez "intentionally, knowingly, and recklessly" failed to disclose his employment relationship with Suzi Faaitiiti ("Faaitiiti"), who asserted that gunshots from that night had damaged the Stainback Organization's property, and "omitted or misrepresented" Faaitiiti's role at the Stainback Organization, a neighboring competitor of plaintiffs' business.

Plaintiffs contend that, but for Officer Hernandez's misrepresentations and omissions, the Assistant DA would not have presented the criminal charges to the grand jury. Officer

---

[1]In deciding Officer Hernandez's Rule 12(b)(6) motion, the court construes plaintiffs' amended complaint in the light most favorable to them, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in plaintiffs' favor. *See, e.g.*, *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).

Hernandez testified at trial regarding his employment relationship with the Stainback Organization and admitted he knew that DPD's General Orders required him to disclose conflicts of interest arising from off-duty employment. After Officer Hernandez was cross-examined regarding his conflict of interest, plaintiffs' defense attorney conferred with the Assistant DA and a supervisor. The supervisor communicated to plaintiffs' defense attorney that if the prosecutor had known about Officer Hernandez's employment relationship with the Stainback Organization, the prosecutor would not have submitted criminal charges to a grand jury or taken plaintiffs into custody. After this conference, the Assistant DA moved to dismiss the criminal charges against plaintiffs "in the interest of justice." Plaintiffs therefore allege false arrest and malicious prosecution claims under § 1983 and state tort claims on the ground that Officer Hernandez did not provide the Assistant DA, DPD officers, or the grand jury with information regarding his off-duty employment and thus the grand jury proceedings and the resulting indictment are tainted.

Officer Hernandez now moves to dismiss plaintiffs' amended complaint under Rule 12(b)(6) for failure to state a claim on which relief can be granted. The court is deciding the motion on the briefs, without oral argument.

## II

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of plaintiffs' amended complaint by 'accept[ing] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (second alteration in

original) (internal quotation marks omitted) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).   To survive a Rule 12(b)(6) motion to dismiss, the plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").   "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'"   *Iqbal*, 556 U.S. at 679 (alteration omitted) (quoting Rule 8(a)(2)).   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

III

The court first turns to plaintiffs' false arrest claim under § 1983.[2]

---

[2]When referring in this memorandum opinion and order to claims brought under § 1983, the court recognizes that "[r]ather than creating substantive rights, § 1983 simply provides a remedy for the rights that it designates[.]"   An "underlying constitutional or statutory violation is a predicate to liability under § 1983." *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (internal quotation marks omitted) (quoting *Johnston v. Harris Cnty. Flood Control Dist.*, 869 F.2d 1565, 1573 (5th Cir. 1989)).   In this case, the alleged underlying constitutional violation is of the Fourth Amendment to the United States Constitution.

A

Officer Hernandez contends that plaintiffs' amended complaint fails to state a false arrest claim because it does not allege that he fabricated evidence, provided false information, or otherwise lied to the grand jury regarding the facts underlying plaintiffs' criminal charges; the taint exception to the independent intermediary doctrine only applies to an officer's acts or omissions that give the false impression that the suspect committed the crime, not that the officer had ulterior motives; that Officer Hernandez's "arguable lapse in judgment" regarding disclosing his potential conflict of interest to the grand jury does not equate to "fabricating evidence to form probable cause"; and that plaintiffs' amended complaint therefore fails to state a plausible false arrest claim because it does not enable the court to draw the reasonable inference that Officer Hernandez provided false information to the grand jury such that its probable cause finding is tainted.

Plaintiffs respond that Officer Hernandez's "series of deceptions, circumventions[,] and omissions" regarding his employment relationship with the Stainback Organization caused plaintiffs to be indicted and taken into custody,[3] Ps. Resp. (ECF No. 30) at 2; that under the taint exception, they are not required to prove that Officer Hernandez "utter[ed]

_____

[3]Officer Hernandez requests in his reply that the court strike plaintiffs' response as untimely. Plaintiffs' response was due January 12, 2024. *See* N.D. Tex. Civ. R. 7.1(e) ("A response and brief to an opposed motion must be filed within 21 days from the date the motion is filed."). Although plaintiffs' response was filed late on January 17, 2024, and parties should adhere to the local rules, the court will consider the response because the timing has not interfered with the decisional process of the court and the five day delay has not materially prejudiced Officer Hernandez, who still had a full opportunity to reply to the response.

a spate of lies" but only that he withheld "relevant information," *id.* at 3; that, under Fed. R.

Evid. 401, relevance is defined broadly to include information that has "any tendency" to

make a matter of consequence more or less probable[4]; and that Officer Hernandez's conflict

of interest is relevant information because it made the grand jury indictment more probable

considering that the Assistant DA's supervisor told plaintiffs' defense counsel that criminal

charges would not have been submitted to the grand jury had Officer Hernandez disclosed

his conflict of interest.

Officer Hernandez also contends that plaintiffs' amended complaint fails to state a

false arrest claim because the allegations establish probable cause: plaintiffs searched the

crime scene for shell casings, placed the shell casings in a cup, and carried the shell casings

somewhere else.  Officer Hernandez maintains that, based on the totality of facts and

circumstances, a reasonable person could conclude that plaintiffs tampered with evidence

because moving the shell casings impacted DPD's ability to recover forensic evidence and

to determine the shooter's location.  He posits that a reasonable person could also infer intent

to impair the evidence's verity or availability from plaintiffs' "simply intend[ing] to

dispossess [themselves] of the object in order to more plausibly disclaim any connection to

it." *Thornton v. Texas*, 425 S.W.3d 289, 304 (Tex. Crim. App. 2014).  Officer Hernandez

therefore moves to dismiss plaintiffs' false arrest claim on the ground that the amended

---

[4]Tex. R. Evid. 401 similarly provides that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."

complaint does not establish a lack of probable cause.

Plaintiffs respond that probable cause did not exist because the grand jury wrongfully issued warrants without knowledge of Officer Hernandez's conflict of interest and because criminal intent was "wholly absent"; Texas law prohibits tampering with evidence to preserve the "honesty, integrity, and reliability of the justice system"; plaintiffs acted according to the statute's purpose because they "alerted the authorities, waited for them, preserved the evidence, and then waited another week" for them to collect the evidence; Frias "never touched the casings at hand," and McKinnon "meticulously collected [the casings] with a pen in a cup"; an investigation was not pending but was merely "anticipated" or "desired" when plaintiffs acted; and probable cause therefore did not exist to arrest or indict plaintiffs because they did not intend to impair the verity or availability of the evidence in an investigation or official proceeding.

B

To plead a plausible § 1983 false arrest claim, plaintiffs must allege sufficient facts for the court to draw the reasonable inference that they were arrested without probable cause, in violation of the Fourth Amendment. *See Parm v. Shumate*, 513 F.3d 135, 142 (5th Cir. 2007). The independent intermediary doctrine is relevant when plaintiffs' claims depend on a lack of probable cause to arrest them. *See Buehler v. City of Austin/Austin Police Dep't*, 824 F.3d 548, 553 (5th Cir. 2016). "It is well settled that if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating

party." *Curtis v. Sowell*, 761 Fed. Appx. 302, 304 (5th Cir. 2019) (per curiam) (internal quotation marks omitted) (quoting *Taylor v. Gregg*, 36 F.3d 453, 456 (5th Cir. 1994), *overruled on other grounds by Castellano v. Fragozo*, 352 F.3d 939 (5th Cir. 2003) (en banc)).  But the causal chain remains intact if "it can be shown that the deliberations of that intermediary were in some way tainted by the actions of the defendant." *Hand v. Gary*, 838 F.2d 1420, 1428 (5th Cir. 1988).  Under this exception to the independent intermediary doctrine, an independent intermediary's probable cause finding does not protect a law enforcement officer whose "malicious motive led the [officer] to withhold relevant information or otherwise misdirect the independent intermediary by omission or commission." *McLin v. Ard*, 866 F.3d 682, 689 (5th Cir. 2017) (citation omitted).  When analyzing allegations of taint at the motion to dismiss stage, mere allegations of taint "may be adequate to survive a motion to dismiss where the complaint alleges other facts supporting the inference." *Id.* at 690 (internal quotation marks omitted) (quoting *Cuadra v. Hous. Indep. Sch. Dist.*, 626 F.3d 808, 813 (5th Cir. 2010)).

C

The court concludes that plaintiffs have pleaded a plausible false arrest claim under § 1983 because plaintiffs' amended complaint alleges sufficient facts for the court to draw the reasonable inference that Officer Hernandez in some way tainted the grand jury's deliberations.  The amended complaint primarily pleads taint by alleging that Officer Hernandez failed to disclose to the Assistant DA, DPD officers, and the grand jury that he

- 8 -

worked off-duty with Faaitiiti and the Stainback Organization, creating a conflict of interest.[5] The omitted information alleged in plaintiffs' amended complaint is sufficient to plausibly plead taint at this stage of the case.

Plaintiffs allege that specific representations and omissions were made to the Assistant DA, DPD officers, and the grand jury. For example, the amended complaint asserts that Officer Hernandez made misstatements or omissions regarding the SIU investigation, plaintiffs' actual connection to the person who discharged the firearm or caused damage to the Stainback Organization's property, his employment relationship with the Stainback Organization and Faaitiiti, who made the complaint, and Faaitiiti's role within the Stainback Organization.

Plaintiffs also allege that Officer Hernandez's specific representations and omissions are relevant, material information. According to plaintiffs, Officer Hernandez's conflict of interest is "relevant" information under Rule 401 and therefore the taint exception to the independent intermediary doctrine applies because the exception does not protect an officer who "actively misled the [Assistant DA] and grand jurors." P. Resp. (ECF No. 30) at 4. *See also Cuadra*, 626 F.3d at 813; *Buehler*, 824 F.3d at 555. Plaintiffs do not cite any case (and court has found none) applying Rule 401's definition of relevance to the independent intermediary doctrine's taint exception. The Fifth Circuit has not defined relevance in this

---

[5]Assistant DA and DPD officers could have independently fact-checked Officer Hernandez's alleged misstatements and omissions regarding the SIU investigation. The only information plaintiffs allege that the Assistant DA and DPD officers did not know relates to Officer Hernandez's off-duty employment.

context.  But district courts within the circuit interpret the term to mean information relevant to a finding of probable cause.  *See Van Dyke v. Shackleford*, 2020 WL 5580162, at *4 (E.D. Tex. Sept. 1, 2020) (interpreting *Cuadara*'s holding to mean that mere generalized allegations of taint, with no explanation as to how additional information would have been relevant to a finding of probable cause, is of no moment); *Paddio v. City of Hammond*, 1997 WL 289704, at *3 (E.D. La. May 28, 1997) (analyzing whether omitted facts were relevant to a finding of probable cause).  Officer Hernandez's failure to disclose his conflict of interest may be relevant to the grand jury's probable cause finding because the Assistant DA's supervisor communicated to plaintiffs' defense attorney that criminal charges would not have been submitted to the grand jury had the prosecutor known of Officer Hernandez's employment relationship with the Stainback Organization.  Plaintiffs also maintain that the supervisor's statement regarding Officer Hernandez's conflict of interest shows that it is material information.

Plaintiffs allege "other facts" that support the inference that Officer Hernandez withheld relevant, material information or otherwise misdirected the grand jury by commission or omission: Officer Hernandez worked at the Stainback Organization on weekends for five to seven years; the Stainback Organization provided Officer Hernandez with the surveillance video depicting plaintiffs responding to the shooting and canvassing the parking lot for shell casings; Faaitiiti provided Officer Hernandez another shell casing that she had been given by an individual; Officer Hernandez did not pursue charges against the individual who provided Faaitiiti with that shell casing; Officer Hernandez told Faaitiiti not

to communicate with third parties regarding the matter; Officer Hernandez knew that he had a duty to disclose his employment relationship with the Stainback Organization; Officer Hernandez knew that the Assistant DA asked about his relationship with Faaitiiti and he communicated that he knew her but did not disclose his employment relationship; the Assistant DA's supervisor communicated to plaintiffs' defense attorney that charges would not have been submitted to the grand jury had Officer Hernandez disclosed his conflict of interest; and the Assistant DA dropped charges against plaintiffs "in the interest of justice." Although plaintiffs can only "speculate" regarding whether some of these other facts were presented or omitted in the grand jury room based on Officer Hernandez's trial testimony, that speculation is sufficient at this stage.[6]

Plaintiffs need not allege that Officer Hernandez fabricated evidence, provided false information, or otherwise lied to give the grand jury the impression that plaintiffs committed a crime. A plaintiff pleading a false arrest claim under the independent intermediary doctrine's taint exception need only allege that an officer's "malicious motive . . . lead [him] to withhold *relevant* information," *Cuadra*, 626 F.3d at 813 (emphasis added), or otherwise misdirected the independent intermediary "by omission or commission." *Hand*, 383 F.2d at 1428. The case law allows plaintiffs to plead taint by omission, so plaintiffs did not need to

_____

[6]The secret reality of grand jury proceedings makes it "understandably difficult for a plaintiff to know what was said—or [was not] said—to the grand jury absent any form of discovery." *Wilson v. Stroman*, 33 F.4th 202, 212 (5th Cir. 2022). And "while that reality [does not] excuse pleading requirements, it does mean that allegations about what was presented or omitted in the grand jury room will in some sense be speculative." *Id.*

allege facts indicating that Officer Hernandez affirmatively provided false information or fabricated evidence to taint the grand jury's deliberations. *See Porter v. Farris*, 328 Fed. Appx. 286, 288 (5th Cir. 2009) (per curiam) (analyzing officer's omission to grand jury that defendant's wife denied his involvement in crime) (citing *Kohler v. Englade*, 470 F.3d 1104, 1113 (5th Cir. 2006) ("[T]he intentional or reckless omissions of material facts from a warrant application may amount to a Fourth Amendment violation.")).

Officer Hernandez quotes in reply a recent Fifth Circuit case that analyzed plaintiffs' false arrest allegations, held that plaintiffs satisfied their burden to plead taint, and remanded to the district court to determine "whether those representations were *false* and whether the omitted information was material to probable cause *with respect to these plaintiffs*." *Wilson v. Stroman*, 33 F.4th 202, 213 (5th Cir. 2022) (emphasis in original). In that case, the Fifth Circuit analyzed a false arrest claim under *Franks v. Delaware*, 438 U.S. 154 (1978): an officer is liable if he "'deliberately or recklessly provides false, material information for use in an affidavit in support of [a warrant]' or 'makes knowing and intentional omissions that result in a warrant being issued without probable cause.'" *Id.* at 206 (alteration in original) (quoting *Melton v. Phillips*, 875 F.3d 256, 264 (5th Cir. 2017) (en banc)). *Franks* requires a two-pronged analysis, asking first whether the affiant made a false statement in support of a warrant, and second whether the alleged false statement is necessary to a finding of probable case. *See Franks*, 438 U.S. at 155-56; *see also Winfrey v. Rogers* ("*Winfrey II*"), 901 F.3d 483, 494-95 (5th Cir. 2018) (analyzing *Franks* false arrest claim). A *Franks* claim is distinguishable from the taint exception despite the "conceptual overlap" because a *Franks*

claim is a "cause of action" while the taint exception is "an exception to a doctrine that *insulates* an official who would otherwise be liable for false arrest." *Wilson*, 4 F.4th at 209 (emphasis in original). The Fifth Circuit's directive on remand in *Wilson* therefore does not apply to plaintiffs' false arrest claim because plaintiffs do not plead a *Franks* false arrest claim.

Because the court construes plaintiffs' amended complaint in the light most favorable to them and draws all reasonable inferences in their favor, the court concludes that plaintiffs allegations enable it to draw the reasonable inference that Officer Hernandez misled the grand jury. *See id.* at 212-13 (holding that complaint was sufficient to survive motion to dismiss where complaint alleged that officials' testimony during public trial resembled misrepresentations and omissions made to magistrate and grand jury); *McLin*, 866 F.3d at 690 n.3 (citing *Bustamante v. Christian*, 1997 WL 42530, at \*5 (N.D. Tex. Jan. 29, 1997) (Fitzwater, J.) (holding that plaintiffs' allegations were sufficient to survive a motion to dismiss when they alleged that the indictment was a product of false and misleading testimony)); *Burroughs v. City of Laurel*, 2019 WL 4228438, at \*9 (S.D. Miss. Sept. 5, 2019) (holding that plaintiff's allegations were sufficient to survive motion to dismiss when they alleged that officers intentionally withheld exculpatory evidence from grand jury and knowingly presented fabricated and/or misleading evidence). And there is no basis in the record for the court not to conclude, after accepting all well-pleaded factual allegations as true, that the omitted relevant, material information identified by plaintiffs was presented to the grand jury. *See Winfrey II*, 901 F.3d at 497; *Winfrey v. Johnson*, 766 Fed. Appx. 66, 70-

71 (5th Cir. 2019) (applying *Winfrey II*).  Accordingly, the court denies Officer Hernandez's motion to dismiss plaintiffs' false arrest claim under § 1983.

D

Officer Hernandez also maintains that plaintiffs' false arrest claim should be dismissed because plaintiffs' arrests were supported by arguable probable cause.  Probable cause to support an arrest exists "when the totality of the facts and circumstances within [an officer's] knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Lincoln v. Turner*, 874 F.3d 833, 842 (5th Cir. 2017) (citation omitted).  Because probable cause is a fact-intensive inquiry, the court is unable to conclude, after drawing all reasonable inferences in plaintiffs's favor, that the amended complaint fails to plead a plausible claim.

IV

The court now turns to plaintiffs' malicious prosecution claim under § 1983.

A

Although unclear based on plaintiffs' amended complaint, plaintiffs' and Officer Hernandez's briefs on the instant motion refer to plaintiffs' federal-law malicious prosecution claim.  Accordingly, to the extent that plaintiffs assert a Fourth Amendment claim under § 1983 for malicious prosecution, the court will address it.

Officer Hernandez contends that plaintiffs' Fourth Amendment-based malicious prosecution claim brought under § 1983 must fail because he is entitled to qualified immunity and the right to be free from malicious prosecution was *not* clearly established at the time of

- 14 -

the alleged violation. *See Morgan v. Chapman*, 969 F.3d 238, 245 (5th Cir. 2020). Plaintiffs respond that Officer Hernandez is not entitled to qualified immunity because he violated clearly established law and he engaged in reckless or intentional conduct.

B

The court will first determine whether plaintiffs have pleaded a plausible malicious prosecution claim before determining whether Officer Hernandez is entitled to qualified immunity.[7]

The Supreme Court only recently recognized a standalone Fourth Amendment malicious prosecution claim. *See Thompson v. Clark*, 596 U.S. 36, 42 (2022). "The gravamen of the Fourth Amendment claim for malicious prosecution, as [the Supreme Court] has recognized it, is the wrongful initiation of charges without probable cause." *Id.* at 43. The common law elements for a malicious prosecution tort include "(i) the suit or proceeding was 'instituted without any probable cause'; (ii) the 'motive in instituting' the suit 'was malicious,' which was often defined in this context as without probable cause and for a purpose other than bringing the defendant to justice; and (iii) the prosecution 'terminated in the acquittal or discharge of the accused.'" *Id.* at 44 (citing T. Cooley, Law of Torts 181 (1880)).

The Fifth Circuit's recognition of a standalone Fourth Amendment malicious

---

[7]*See infra* at § IV(C)(1) (addressing two-prong analysis for qualified immunity, and explaining that, if no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity).

prosecution claim has also been in flux.  At one time, the Fifth Circuit determined that "the elements of the state-law tort of malicious prosecution and the elements of the constitutional tort of 'Fourth Amendment malicious prosecution' [were] coextensive." *Gordy v. Burns*, 294 F.3d 722, 725 (5th Cir. 2002), *abrogated by Castellano v. Fragozo*, 352 F.3d 939 (5th Cir. 2003) (en banc).  A plaintiff therefore "had to prove six elements to prevail on a constitutionalized malicious prosecution claim." *Armstrong v. Ashley*, 60 F.4th 262, 279 (5th Cir. 2023) (citing *Gordy*, 294 F.3d at 727).  These six elements included

> (1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) malice; and (6) damages.

*Id.*  But in *Castellano*, 352 F.3d at 954, the Fifth Circuit abrogated the rule iterated in *Gordy*. It was not reinstated until after *Thompson*, which provided "clear recognition of the constitutional tort of malicious prosecution, overruling [*Castellano*]."  *Armstrong*, 60 F.4th at 279.  Today, *Gordy* applies, and "parties asserting a Fourth Amendment malicious prosecution claim under § 1983 must prove the above elements, in addition to the threshold element of an unlawful Fourth Amendment seizure."  *Id.* (citing *Thompson*, 596 U.S. at 43 n.2).  Because plaintiffs were detained and, as stated above, they plead sufficient allegations to enable the court to draw the reasonable inference that they were detained in the absence of probable cause, they have met this threshold inquiry.  *See Manuel v. City of Joliet, Ill.*, 580 U.S. 357, 367 (2017).  Moreover, because the parties do not dispute any element of malicious

prosecution, the court assumes that plaintiffs have sufficiently pleaded a malicious prosecution claim under § 1983.

C

The court next determines whether Officer Hernandez is entitled to qualified immunity.

1

To decide whether Officer Hernandez is entitled to qualified immunity, the court performs a two-pronged analysis. *See Mitchell v. Mills*, 895 F.3d 365, 369 (5th Cir. 2018). The court begins with the question "whether, taken in the light most favorable to plaintiff as the party asserting the injuries, the facts they have alleged show that [the defendant's] conduct violated a constitutional right." *Ellis v. Crawford*, 2005 WL 525406, at \*3 (N.D. Tex. Mar. 3, 2005) (Fitzwater, J.); *see also Pearson v. Callahan*, 555 U.S. 223, 232 (2009) ("First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right." (internal quotation marks and citations omitted)). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "[I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id.* "Even if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable." *Wallace v. County of Comal*, 400 F.3d 284, 289 (5th Cir. 2005). "The objective

- 17 -

reasonableness of allegedly illegal conduct is assessed in light of the legal rules clearly established at the time it was taken." *Salas v. Carpenter*, 980 F.2d 299, 310 (5th Cir. 1992) (citing *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). "'The defendant's acts are held to be objectively reasonable unless all reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the' plaintiff's asserted constitutional or federal statutory right." *Cozzo v. Tangipahoa Par. Council*, 279 F.3d 273, 284 (5th Cir. 2002) (quoting *Thompson v. Upshur County*, 245 F.3d 447, 457 (5th Cir. 2001)).

Clearly established rights must not be defined at a high level of generality. *See Brosseau v. Haugen*, 543 U.S. 194, 198-99 (2004) (per curiam). "For example, the right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that Clause . . . violates a clearly established right." *Anderson*, 483 U.S. at 639. But because defining clearly established rights so broadly would "destroy" the balance struck by the qualified immunity doctrine, rights must instead be defined in a "more particularized" sense. *Id.* at 639-40. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Brosseau*, 543 U.S. at 199 (quoting *Saucier*, 533 U.S. at 202). Although this does "not require a case directly on point," it does command that the plaintiff show that "the violative nature of the particular conduct is clearly established." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) (emphasis omitted) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). "Such

- 18 -

specificity is especially important in the Fourth Amendment context, where the [Supreme] Court has recognized that '[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts.'" *Id.* (second alteration in original) (quoting *Saucier*, 533 U.S. at 205). In essence, the plaintiff must "identify a case where an officer acting under similar circumstances as [the defendant] was held to have violated the Fourth Amendment." *White v. Pauly*, 580 U.S. 73, 79 (2017) (per curiam).

"When confronted with a qualified-immunity defense at the pleadings stage, the plaintiffs must plead 'facts which, if proved, would defeat [the] claim of immunity.'" *Guerra v. Castillo*, 82 F.4th 278, 285 (5th Cir. 2023) (alteration in original) (quoting *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019)). The pleading standard remains the same, and "'[t]he crucial question is whether the complaint pleads facts that, if true, would permit the inference that [Officer Hernandez is] liable under § 1983, and would overcome his qualified immunity defense.'" *Id.* (quoting *Terwilliger v. Reyna*, 4 F.4th 270, 280 (5th Cir. 2021)). At this stage, it is plaintiffs' burden to demonstrate that Officer Hernandez is not entitled to qualified immunity. *See id.*

2

The court concludes that plaintiffs have not adequately pleaded a malicious prosecution claim under § 1983 because, between 2003 and 2021, Fifth Circuit precedent explicitly denied the possibility of a constitutional malicious prosecution claim. *See Guerra*, 82 F.4th at 289; *Anokwuru v. City of Houston*, 990 F.3d 956, 964 (5th Cir. 2021); *Espinal v.*

*City of Houston*, ___ F.4th ___, 2024 WL 981839, at *5 (5th Cir. Mar. 7, 2024).

Officer Hernandez maintains that he is entitled to qualified immunity because he did not violate clearly established law—that none of his alleged misconduct occurred after the Supreme Court's decision in *Thompson*, which recognized a standalone Fourth Amendment malicious prosecution claim and overruled *Castellano*. *See Thompson*, 596 U.S. at 42. Although a Fifth Circuit decision has rejected Officer Hernandez's position in the context of a § 1983 malicious prosecution claim, *see Bledsoe v. Willis*, 2023 WL 8184814, at *6 (5th Cir. Nov. 27, 2023) (per curiam), that opinion is unpublished and therefore not binding in this case. A recent published, binding Fifth Circuit opinion held that an officer was entitled to qualified immunity from a malicious prosecution claim because the Fifth Circuit had rejected the existence of a constitutional malicious prosecution claim before *Thompson*, which was rendered on April 4, 2022. *See Guerra*, 82 F.4th at 289. Although plaintiffs maintain that McKinnon's charges were dismissed on April 21, 2022, 17 days after *Thompson*, the relevant inquiry is whether the law was clearly established "at the time of [Officer Hernandez's] alleged misconduct." *Jennings v. Patton*, 644 F.3d 297, 300 (5th Cir. 2011) (citing *Pearson*, 555 U.S. at 232). Plaintiffs' amended complaint does not allege any facts regarding Officer Hernandez's alleged misconduct after March 22, 2022, when he testified at Frias' trial. The court concludes that plaintiffs have failed to plead a plausible § 1983 malicious prosecution claim because they have not satisfied their burden to demonstrate that Officer Hernandez is not entitled to qualified immunity. Accordingly, the court grants Officer Hernandez's motion

to dismiss plaintiffs' malicious prosecution claim under § 1983.[8]

V

The court now turns to plaintiffs' state-law claims for malicious prosecution, false imprisonment, and civil conspiracy.

A

Officer Hernandez maintains that § 101.106(f) of the Texas Tort Claims Act ("TTCA") bars plaintiffs from pursuing their state-law tort claims against him.  He contends that, under the factual allegations of the amended complaint, he is alleged to have been an employee at DPD, a governmental unit; that the amended complaint alleges that his conduct occurred within the scope of his employment as a police officer; and that the state tort claims could have been brought against the City, according to the Supreme Court of Texas' interpretation of the phrase.

Plaintiffs respond that whether Officer Hernandez was acting within the scope of his employment is an "open question" because his conduct was *ultra vires*.  And plaintiffs have attached to their response brief a second amended complaint for use "if pursuant to § 101.106, the City of Dallas, though, seeks to stand in Defendant's shoes[.]"[9]  P. Resp. (ECF

---

[8]Assuming *arguendo* that *Bledsoe v. Willis*, 2023 WL 8184814 (5th Cir. Nov. 27, 2023) (per curiam), is inconsistent with this court's reasoning, *Bledsoe* is unpublished and therefore not binding in this case.

[9]The TTCA contains an "elections of remedies" provision that is designed to require "a plaintiff to make an irrevocable election at the time suit is filed between suing the governmental unit under the [TTCA] or proceeding against the employee alone[.]"  *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 657 (Tex. 2008) (citing Tex. Civ. Prac.

No. 30) at 9.

B

TTCA § 101.106(f) provides:

> If a suit is filed against an employee of a governmental unit
> based on conduct within the general scope of that employee's
> employment and if it could have been brought under this chapter
> against the governmental unit, the suit is considered to be
> against the employee in the employee's official capacity only.
> On the employee's motion, the suit against the employee shall
> be dismissed unless the plaintiff files amended pleadings
> dismissing the employee and naming the governmental unit as
> defendant on or before the 30th day after the date the motion is
> filed.

Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f) (Vernon 2003).  Although § 101.106(f) is

a state statute, it can be raised in federal court as a defense to alleged violations of Texas tort

law.  *See, e.g.*, *Wilkerson v. Univ. of N. Tex.*, 878 F.3d 147, 158-62 (5th Cir. 2017).

To obtain dismissal under § 101.106(f), a defendant must show that the plaintiff's suit

"(1) was based on conduct within the general scope of the defendant's employment with a

governmental unit and (2) could have been brought against the government unit under the

[Texas] Tort Claims Act."  *Anderson v. Bessman*, 365 S.W.3d 119, 124 (Tex. App. 2011, no

pet.); *see also Zahn v. Solano*, 2012 WL 13027085, at *1 (N.D. Tex. May 29, 2012) (Means,

J.); *Kelemen v. Elliott*, 260 S.W.3d 518, 524 (Tex. App. 2008, no pet.).  The first prong of

the test involves two inquiries: "whether the individual defendant was an employee of a

―――――――――――――――

& Rem. Code Ann. § 101.106).  Plaintiffs have elected to proceed against Officer Hernandez.

- 22 -

governmental unit and whether the acts alleged fall within the scope of that employment at the relevant time." *Bessman*, 365 S.W.3d at 124 (first citing *Poland v. Willerson*, 2008 WL 660334, at *4 (Tex. App. Mar. 13, 2008, pet. denied) (mem. op.); and then citing *Turner v. Zellers*, 232 S.W.3d 414, 417 (Tex. App. 2007, no pet.)).   Under the second prong, "[a]ll common-law tort theories alleged against a governmental unit are assumed to be 'under the Tort Claims Act' for purposes of section 101.106." *Wilkerson*, 878 F.3d at 161 (quoting *Franka v. Velasquez*, 332 S.W.3d 367, 369 (Tex. 2011)).   Thus a suit "could have been brought under [the TTCA] against the governmental unit" even if the TTCA does not waive sovereign immunity for the suit in question.   *Franka*, 332 S.W.3d at 369.

C

Because Officer Hernandez was an employee of a governmental unit, the court considers whether he was acting within the scope of his employment at the relevant time.

1

The TTCA defines "scope of employment" as "the performance for a governmental unit of the duties of an employee's office or employment and includes being in and about the performance of a task lawfully assigned to an employee by a competent authority." Tex. Civ. Prac. & Rem. Code Ann. § 101.001(5).   Texas peace officers retain "their status as peace officers twenty-four hours a day[.]" *Blackwell v. Harris County*, 909 S.W.2d 135, 139 (Tex. App. 1995, writ denied).   As a result, the "scope of employment is not determined simply on the basis of whether an officer is technically off-duty or on-duty." *Harris County v. Gibbons*, 150 S.W.3d 877, 882 (Tex. App. 2004, no pet.).   "Instead, the dispositive question is: 'in

what capacity was the officer acting at the time he committed the acts for which the complaint is made.'" *Kraidieh v. Nudelman*, 2016 WL 6277409, at *5 (Tex. App. Oct. 27, 2016, no pet.) (mem. op.) (citing *Blackwell*, 909 S.W.2d at 139).   "'If an officer is performing a public duty, such as the enforcement of general laws, he is acting in the course and scope of his employment as a police officer even if the [private] employer directed him to perform the duty.'" *Id.* (brackets in original) (citing *Gibbons*, 150 S.W.3d at 882).   If, however, "there is no immediate crime and the off-duty officer is protecting a private employer's property or otherwise enforcing a private employer's rules or regulations, the trier of fact determines whether the officer was acting as a public officer or as a servant of the employer." *Gibbons*, 150 S.W.3d at 882 (citing *Mansfield v. C.F. Bent Tree Apartment Ltd. P'ship*, 37 S.W.3d 145, 150 (Tex. App. 2001, no pet.)).   In addition, "[a]n employee's act is not within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer." Restatement (Third) of Agency § 7.07(2) (2006).

## 2

Officer Hernandez must satisfy his burden to show that plaintiffs' suit is based on conduct within his employment at DPD.   *See Bessman*, 365 S.W.3d at 124.   Officer Hernandez maintains that plaintiffs' allegations are based on his conduct as a police officer in the DPD Property Crimes Division.   He cites plaintiffs' amended complaint, which alleges that "[Officer Hernandez] ha[d] been a detective in the DPD Property Crimes Division" for roughly one year before the incident.   But the amended complaint also alleges that Officer

Hernandez worked off-duty at the Stainback Organization, a private employer.

It is unclear from the amended complaint whether plaintiffs' allegations are based on Officer Hernandez's employment at DPD or the Stainback Organization. For example, Officer Hernandez was not responding to an immediate crime. The amended complaint alleges that Officer Hernandez was "somehow" assigned to "follow up" on the Stainback Organization's reported property damage two days later—but he had neither been dispatched to respond to the offense nor assigned by a supervisor. He retrieved the surveillance video depicting the Stainback Organization's property damage from the Stainback Organization itself and brought it to the SIU. He also allegedly "circumvented" DPD's submission process to the DA's Office to pursue criminal charges against plaintiffs, who operated a neighboring competitor of the Stainback Organization's business. Based on the amended complaint alone, it remains unclear what capacity Officer Hernandez was acting in at the time he committed the alleged acts. Accordingly, the court concludes at the pleading stage that Officer Hernandez has failed to carry his burden to show that plaintiffs' state-law tort claims are based on conduct within the general scope of his employment with DPD, not the Stainback Organization. The court therefore denies Officer Hernandez's motion to dismiss plaintiffs' state-law claims.

*   *   *

For the reasons explained, the court grants Officer Hernandez's December 22, 2023 motion to dismiss regarding plaintiffs' malicious prosecution claim under § 1983 and denies it as to plaintiffs' false arrest claim under § 1983 and state-law claims.

**SO ORDERED**.

March 22, 2024.

SIDNEY A. FITZWATER
SENIOR JUDGE

- 26 -